RYAN LAW, APLC
Andrew T. Ryan (SBN 227700)
1901 Avenue of the Stars, 2nd Floor
Los Angeles, California 90067
Tel: (310) 957-2093
Fax: (310) 496-1435

Attorneys for Plaintiff Jorge Hernandez

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

JORGE HERNANDEZ, an individual,

          Plaintiff,

   vs.

THE CITY OF IMPERIAL, a municipal corporation; MIGUEL COLON, an individual; and DOES 1 through 50, inclusive.
          Defendants.

Case No.:  3:16-cv-00645-W-KSC

**FIRST AMENDED COMPLAINT FOR DAMAGES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

**<u>JURY TRIAL DEMANDED</u>**

      Plaintiff Jorge Hernandez (hereinafter "Mr. Hernandez" or "Plaintiff") alleges as follows:

///

///

1

FIRST AMENDED COMPLAINT

1

## JURISDICTION & VENUE

2     1. This action is brought in the United States District Court under  42
3  U.S.C. § 1983; 29 U.S.C § 201; et seq.; to recover damages against
4  Defendants and each of them for violation of Plaintiff's rights guaranteed by
5  the statues and Constitution of the United States. The jurisdiction of this
6  Court is predicated on 28 U.S.C. §§ 1331 and 1343. The Court also has
7  concurrent jurisdiction over the state claims herein.

8     2. Venue is proper under 28 U.S.C. § 1391(b) because a substantial
9  part of the events or omissions giving rise to the claim occurred in this
10  District.

11

## THE PARTIES

12     3. Plaintiff Jorge Hernandez is an individual residing in Imperial
13  County, California and was hired by Defendant City of Imperial as a sworn
14  Police Officer from approximately May 2008 through March 2015.

15     4. Defendant City of Imperial is a municipal corporation located in the
16  County of Imperial, State of California and the employer of Plaintiff and the
17  individual Defendants in its Police Department ("Imperial Police Department"
18  or "IPD") sued herein in their personal and official capacity, all of whom acted
19  in the course and scope of their employment under color of law and the
20  authority vested in them by Defendant City of Imperial.

21     5. Defendant Miguel Colon ("Colon") was at all times, the Police Chief
22  for the City and Department. In doing the things alleged herein, the Chief
23  acted under color of state law, within the course and scope of his
24  employment, and as an official policy-maker for the City and/or the
25  Department. As a Department Head and the highest ranking sworn law
26  enforcement official, he, along with and in conjunction with other Defendants,
27  is vested with policy-making authority over actions such as the ones at issue
28  in this complaint.

FIRST AMENDED COMPLAINT

6. Defendant DOES 1 THROUGH 50 are not known or identified at this time. On information and belief, Plaintiffs allege that each DOE is in some manner responsible for the wrongs alleged herein, and that each such Defendant advised, encouraged, participated in, ratified, directed, or conspired to do, the wrongful acts alleged herein. When the true names and capacities of said Defendants become known, Plaintiffs will seek relief to amend this complaint to show their true identities in place of their fictitious names as DOES 1 through 50.

7. Defendants, and each of them, were the agent, employees and servants of every other Defendant. Defendants acted in the course and scope of said agency, service and employment at all relevant times.

<u>**FACTS COMMON TO ALL COUNTS**</u>

8. Mr. Hernandez is an individual who was born and raised in El Centro, California. He graduated from Central Union High School in 1988 with the dream of becoming a police officer. Prior to becoming to fulfilling this dream, Mr. Hernandez served in the California National Guard from 1989 until he was honorably discharged in 1995.

9. After Mr. Hernandez's honorable discharge from the National Guard, he accepted employment with the El Centro Police department. Mr. Hernandez worked as a police officer with El Centro Police Department from 1992-2002. From 2002-2004, Mr. Hernandez was employed by the Imperial County Sheriff's Office. In 2004, after leaving the Imperial County Sheriff, Mr. Hernandez was employed by both the Union Pacific Railroad and the CA State Athletic Commission. Mr. Hernandez returned to police work in 2008 when he was hired by Imperial Police Department. Mr. Hernandez remained at Imperial until he was wrongfully terminated in 2015.

10. Mr. Hernandez was initially hired by the Chief of Police of Imperial, Miguel Colon. Colon had stated that he hired Plaintiff because of his past

FIRST AMENDED COMPLAINT

record with El Centro Police Department and that it had exemplified that Plaintiff "stood for what was right" and showed "integrity and character".

11. Plaintiff was named 2009 officer of the year for Plaintiff's excellent conduct and performance.

12. Although initially serving as an assistant detective, Plaintiff was made the sole detective responsible for responding to all felony complaints and call outs in April of 2010. It was at this point that Plaintiff had his first minor disagreement with Officer Barra. Plaintiff had become aware of Barra instructing a junior officer to stay home and not to work on a particular holiday so that Barra himself could take the work and be paid at a premium rate. Plaintiff confronted Barra, Barra chalked it up to a "mistake" and Plaintiff considered the matter closed.

13. In June 2012, Plaintiff was promoted to the rank of police sergeant. This promotion required Plaintiff to respond to all investigative call outs with a new detective Abel Heredia, whom Plaintiff was assigned to train.

14. In March 2013, Plaintiff was made investigative sergeant. During his time as police sergeant, Plaintiff observed that Barra had no working knowledge of several essential police operations. Moreover, Plaintiff became aware of Barra acting dishonestly and unethically in his day to day operational control of the department. After receiving an excellent performance evaluation form Colon for the 2012-2013 year, Plaintiff felt that he had gained Colon's confidence and could address the aforementioned issues. As such, Plaintiff gradually began bringing up liability issues to Colon. Amongst those were i) Barra refusing to produce police reports when required ii) Barra delegating all assigned duties to other offices iii) Barra abusing his position and authority for personal gain iv) Barra being dishonest with subordinates v) Barra refusing to assist with patrol or investigation in times of personnel shortages vi) Barra sending himself to out of class training

FIRST AMENDED COMPLAINT

for nefarious reasons vii) Barra not addressing personnel issues appropriately viii) Barra making his own schedule.

15. At a supervisor meeting in 2012, Plaintiff addressed these issues openly. Plaintiff was met with silence by Colon and resentment by Barra. That was the last supervisor meeting that Plaintiff attended. Subsequent to this meeting, Plaintiff learned that Colon and Barra enjoyed a very close personal relationship and that Colon did not appreciate the criticisms that Plaintiff raised in the supervisory meeting.

16. Despite knowing this, Plaintiff knew that the needs and standards of the police department were paramount and continued to address these and other various issues with Colon. Instead of putting his personal feelings aside, Plaintiff heard that Colon began telling various sworn and non-sworn personnel that Plaintiff was a "cancer" that needed to be "taken care of." After hearing these comments, Plaintiff brought up Colon's defamatory remarks to the city and HR managers (including Marlene Best), both admitted to having heard Plaintiff being referred to as a "cancer". However, no assistance was provided to Plaintiff in this matter.

17. In approximately January 2013, Colon announced that a new administrative sergeant" position would become open and all sergeants would rotate in and out of this position. Despite this announcement, Colon promoted Barra into that position permanently, which included a significant salary increase. This move placed Barra as second in command of the force. After Barra's permanent promotion, Plaintiff started to be targeted for retaliation because of the issues he attempted to address regarding Barra's conduct.

18. In May 2013, Plaintiff's uniform allowance was reduced by half. When Plaintiff complained about this, nothing was done. Instead, Plaintiff

FIRST AMENDED COMPLAINT

1    was told that from now on the city was going to administer uniform allowance
2    payments in this manner and that Plaintiff "just happened to be the first case".

3        19. In July 2013, Plaintiff suffered an injury to his eyes while on duty
4    as he was extracting a mother and her child from an overturned vehicle.
5    Subsequently, Plaintiff sought medical attention and as a result Plaintiff
6    missed three days of work. Plaintiff was required to use 36 hours of his sick
7    time to cover for the time off. Plaintiff complained about this but was told by
8    the Colon and Best that this was "new worker compensation guideline" and
9    that they had just started implementing it and Plaintiff again "just happened
10   to be the first case".

11       20. On or about December 13, 2013 while Plaintiff was on duty, a
12   struggle ensued with a heavily intoxicated suspect. This violent encounter
13   caused Plaintiff's uniform pants to tear. Subsequent to the altercation,
14   Plaintiff put in for reimbursement for the pants. Colon denied the
15   reimbursement stating that the incident was considered "normal wear and
16   tear".

17       21. In January 2014, Colon placed Barra in charge of the scheduling.
18   As such, in February 2014, when Plaintiff was placed on court stand-by all
19   day, Plaintiff put in for 8 hours of work. Plaintiff did this knowing that officers
20   routinely would put in for 8 hour court stand by pay. However, Colon only
21   accepted 4 hours of the 8 hour request and when asked why by Plaintiff, he
22   was told by Colon that pursuant to policy officers were only allowed to be
23   paid 4 hours. When Plaintiff pointed out that other officers had been paid 8
24   hours for court stand-by duty Plaintiff was told by Barra and Colon that those
25   were "mistakes" and are "under review". As such, Plaintiff was never paid for
26   his entire 8 hour shift. Further, Colon sent an email to the DAS office in this
27   regard implying Plaintiff did something wrong in an attempt to discredit
28   Plaintiff.

FIRST AMENDED COMPLAINT

22. Plaintiff had also made submissions for overtime as Plaintiff would have to stay past his full shift to answer phone calls and respond to department emails. Colon denied Plaintiff overtime stating that "he was not going to pay officers to answer their phones or emails."

23. In March 2014, Plaintiff had been reassigned to the day shift after spending six months straight on the night shift. Plaintiff had informed Colon that one week prior to the change in his shift he had stayed over his shift and put in for 30 minutes of overtime because Barra arrived to work 30 minutes after the start of his scheduled shift. Plaintiff informed Colon that this was documented and that Barra should receive a reprimand pursuant to the department's policy. Colon became angry and yelled at Plaintiff to "get out" of his office. Afterwards, when Plaintiff saw Colon in the parking lot, Colon walked up to Plaintiff waving the written reprimand yelling "you got lucky on a technicality" and threatening Plaintiff that "next time you won't be so lucky." Plaintiff feared that this took to mean that Colon intended to punish him for reporting Barra's violation of department policy. Plaintiff was correct. Colon put Plaintiff right back on the night shift and kept him there for an additional two months.

24. On or about April 28, 2014, while Plaintiff was still on the night shift, a call was received by the department regarding an incident of child abuse. Barra was tasked with conducting a welfare check of the child by Colon. Barra took two inexperienced police officers and went to the residence in question. After knocking on the door to no avail, all personnel were cleared from the call and no further attempts were made to check on the status of the child. Several hours later, Plaintiff was contacted by Colon. Colon demanded that Plaintiff conduct an investigation into the incident. Plaintiff conducted his investigation over the next several weeks. During this time, Plaintiff asked Barra why he did not conduct an investigation as well as it

FIRST AMENDED COMPLAINT

was assigned to him initially and it involved a senior officer and possible serious criminal conduct. Barra refused to answer Plaintiff. Plaintiff told Barra that he was going to inform Colon and request that Barra swap shifts for the remainder of the month so that Plaintiff could conduct his investigation properly. Barra agreed. The request was sent to Colon and Colon accepted the swap. After advising Barra of the swap date, Barra reneged on his word and stated that a "swap was never agreed to" and that he "misunderstood" plaintiff. Colon sided with Barra, claiming that he had misunderstood as well, and told Plaintiff that he was to remain on the night shift until further notice.

25. Throughout the month of May, Plaintiff brought other issues of liability to Colon's attention. Amongst those were i) Barra compelling an 8 month pregnant officer restricted to light duty, to conduct a traffic stop in an unmarked vehicle ii) Barra warning residents of a drug house the police were watching them during an active investigation iii) Barra scheduling oversights which in one case left a junior officer alone for 4 hours iv) Barra harassing other employees v) Barra delegating a funeral detail to two different offices, telling each the other was in charge which caused confusion and was ultimately detrimental to the proceedings and vi) being told from other subordinate officers that Colon was telling everyone what a "cancer" Plaintiff was and that he was "going to get rid of him".

26. On May 26, 2014 and after 8 months on the night shift, Plaintiff was finally changed back to the day shift. However, Plaintiff was never formally notified of the change instead he was told by a subordinate officer 4 hours into Plaintiffs actual rescheduled work day. Since the change hadn't been put onto the schedule, Plaintiff lost one full day of work. Plaintiff brought this to Barra's attention but was told that it was a "scheduling oversight". Two days after the fact Barra posted the update.

FIRST AMENDED COMPLAINT

27. On or about June 10, 2014, Colon approached Plaintiff and instructed him to investigate a complaint made to him regarding Officer A. Stiff. Colon informed Plaintiff that Officer Stiff was reported as being at a private residence while on duty for over two hours. Plaintiff questioned Officer Stiff and was told by Stiff that she remained on the property only for one hour and that she had visited the property to have lunch which was approximately 0.6 miles outside of the city. Plaintiff counseled Officer Stiff about spending time at a private residence telling her that it could portray a negative image. After the conclusion of the investigation, Plaintiff informed Colon of his findings. Colon was upset that Plaintiff was questioning the accuracy of the complaint produced by city manager Best. Colon stormed Plaintiff's office and berated Plaintiff screaming at him to write up Officer Stiff for being outside the city limits. Plaintiff explained to Colon that he could not write Officer Stiff up for that because department policy permits officers to travel up to 1.8 miles outside the city limits for meals. Colon fuming told Plaintiff he did not care and that he wanted Officer Stiff written up regardless. Plaintiff told Colon that he would not do that as he felt that he was being compelled to produce a fraudulent document. Colon told Plaintiff that he was to write Officer Stiff up or risk an insubordination charge. After making this threat, Colon relieved Plaintiff of his duties as investigation supervisors. Plaintiff fearing he would be subject to termination, wrote the reprimand as directed. Despite being forced to produce an inaccurate document, Plaintiff was still issued a counseling memorandum for not producing a "competent" report. Plaintiff also received a reprimand for being insubordinate and was officially relieved of his duty as investigation supervisor. Plaintiff was never reinstated to his positon as investigation supervisor.

28. Colon's erratic behavior against Officer Stiff continued. Plaintiff witnessed Colon off-duty, disheveled and glassy eyed become enraged at

FIRST AMENDED COMPLAINT

Officer Stiff in public. Colon berated her for leaving a crash site. Plaintiff contemplated placing Colon into protective custody and believed that Colon would possibly physically assault her. After the incident, Plaintiff reported the entire incident to HR Director Gaddis. Plaintiff explained Colon was off duty and suffering some sort of break down. Plaintiff never received a noteworthy response from HR. On July 8, 2014, Plaintiff emailed HR managers to address Colon's extremely unsafe behavior in having an unsecure firearm on his desk in front of Plaintiff during a meeting with Plaintiff and another officer, Martinez, wherein he terminated Martinez.

29. In September 2014, Plaintiff had sent an email to Colon regarding a written disciplinary request of Corporal Valenzuela. Plaintiff's email was immediately deemed "discourteous" without any investigation into its merit. Instead, Plaintiff was placed on immediate administrative leave. During the time Plaintiff was on administrative leave, Colon took the opportunity to continue spread false rumors about Plaintiff and disparage Plaintiff's name. Finally, in March 2015, Plaintiff was terminated for sending the aforementioned email.

30. Plaintiff has taken any and all necessary steps to perfect this lawsuit, including the filing of appropriate tort claims Specifically, Plaintiff served a government tort claim letter to the Defendants. Plaintiff did not receive a response within 45 day window and now seek redress from this honorable Court.

## FIRST CAUSE OF ACTION

*42 U.S.C. § 1983 Claim*

(Against All Defendants)

31. Plaintiff incorporates herein by reference the foregoing allegations. This cause of action is brought by all Plaintiffs against all Defendants.

32. 42 U.S.C. § 1983 provides "Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other property proceeding for redress."

33. Defendants retaliated against Plaintiff by taking adverse employment actions against him due to his constitutionally protected speech and associational activities. As a direct result of the Plaintiff exercising his constitutional rights to free speech and participating in labor, organizational, social and political activities, Defendants took the adverse action against him. Absent said protected speech, Plaintiff would not have suffered adverse employment actions, and would not have been injured.

34. The various acts of intimidation, reprisal, retaliation, suppression and/or restraint exercised by Defendants against Plaintiff have created a chilling effect on his legitimate political, social and organizational speech by creating fear, hesitation, hostility and other destructive responses.

35. In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiff under the First and Fourteenth Amendments to the United States Constitution to free expression, association and assembly. Specifically, Defendants have taken the aforementioned action against Plaintiff in direct retaliation for, and in response to the various protected activities of Plaintiff.

36. Based upon information and belief, the acts and omissions of Defendants, and each of them, were done by Defendants under color of state law and as final policy making authorities to which Defendant Imperial delegated its governing powers in the subject matter areas in which these

FIRST AMENDED COMPLAINT

policies were promulgated or decisions taken or customs and practices followed. The acts and omissions described above were taken by Imperial's official policy makers as members charged with such responsibility.

37. It was or should have been plainly obvious to any reasonable policy making official of Imperial that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiff's clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual Defendants, according to proof.

38. Plaintiff has no plain, speedy nor adequate remedy at law to prevent future violations of his civil rights, and therefore seeks extraordinary relief in the form of permanent injunctions, as hereafter described. Damages alone are inadequate and injunctive relief is sought to command Defendants to return Plaintiff to his prior position, with all lost benefits and salary, in order to place him in a position he would have been in, absent the unlawful conduct by Defendants. In addition, as to Plaintiff, injunctive relief is sought to command Defendants to cease and desist and refrain from engaging in actions designed to seek prosecution of Plaintiff and from carrying out a vindictive investigation.

## **SECOND CAUSE OF ACTION**

*Gov't Code §§ 3300 et seq., 3502, 3506 & Labor Code § 1102.5 –*

*Retaliation*

(Against Defendants Imperial and Does 1-50)

39. Plaintiff incorporates herein by reference the foregoing allegations.

40. Plaintiff hereby incorporates each and every preceding paragraph as though set forth in full here. This cause of action is brought by all Plaintiffs against all Defendants mentioned above.

41. Labor Code section 1102.5 prohibits an employer, among other things, from retaliating against an employee for disclosing a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

42. Government Code sections 3502 and 3506 prohibit public agencies from, among other things, interfering with, or discriminating against, public employees because of their participation in the activities of employee organizations for the purpose of representation on all matters of employer-employee relations.

43. Government Code sections 3300 et seq. prohibits an employer from subjecting an officer to punitive action, threatening with punitive action, or denying a promotion for the lawful exercise of his rights under the Act.

44. Defendants actions as alleged herein are violations of these statutory protections afforded to individuals such as Plaintiff. In engaging in the aforementioned speech activities, Plaintiff engaged in activities protected by these statutes. As a direct result of the Plaintiff's speech/disclosures, the Defendants took the aforementioned adverse actions against them. Absent said speech, Defendants would not have taken said actions. In doing the things alleged herein, Defendants, and each of them, violated the rights of Plaintiffs as set forth herein.

45. In doing the things alleged herein, Defendant acted with malicious intent to violate Plaintiff's rights, or at least in conscious, reckless, and callous disregard of Plaintiff's rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are

FIRST AMENDED COMPLAINT

sought according to proof. Punitive damages are sought against the individual defendants, according to proof.

46. California Government Code Section 3300 et seq. provides that where it finds that an employer has violated any of the provisions of the Public Safety Officers Procedural Bill of Rights Act, a court may render appropriate injunctive or other extraordinary relief to remedy the violation and to prevent future violations of a like or similar nature including, but not limited to the granting of a temporary restraining order, preliminary or permanent injunction prohibiting the public safety department from taking any punitive action against the public safety officer. Defendants maliciously violated the Act with the intent to injure Plaintiff all in retaliation for his lawful exercise of their statutory and constitutional rights. Defendants are therefore liable for a civil penalty not to exceed twenty-five thousand dollars ($25,000) for each violation, for reasonable attorney's fees as may be determined by the court, as well as the officers' actual damages.

47. It was or should have been plainly obvious to any reasonable policy making official of Imperial that the acts and omissions of Defendants as alleged herein, taking singly or in conjunction, directly violated and continued to violate Plaintiffs' clearly established constitutional and statutory rights. In doing the things alleged herein, Defendants acted with malicious intent to violate Plaintiffs' rights, or at least in conscious, reckless, and callous disregard of Plaintiffs' rights and to the injurious consequences likely to result from a violation of said rights. General and special damages are sought according to proof. Punitive damages are sought against the individual defendants, according to proof.

FIRST AMENDED COMPLAINT

**THIRD CAUSE OF ACTION**

*FLSA Claims, 29 U.S.C § 201, Et Seq.*

(On behalf of Jorge Hernandez against

City of Imperial and DOES 1-50 only)

48. The allegations of each of the preceding paragraphs are re-alleged and incorporated herein by reference.

49. At all relevant times, each DEFENDANT has been,  and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for commerce," within the meaning of the FLSA, 29 U.S.C. § 203.

50. At all relevant times, Defendants have employed, and continue to employ, "employee[s]" including Plaintiff.

51. At all relevant times, Defendant had had gross operating revenues in excess of $500,000.

52. Plaintiff consents to sue in this action pursuant to Section 16(b) of the FLSA, 29 U .S.C. § 216(b).

53. The FLSA requires each covered employer, such as Defendant, to compensate non-exempt employees at the rate of at least the  minimum wage for all compensable hours worked, and not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a week.

54. Plaintiff is entitled to be paid at least the minimum wage, and for weeks in which they worked more  than 40 hours, for overtime compensation for all overtime hours worked.

55. By failing to compensate Plaintiff  not less than one and one-half times the regular rate of pay for work performed in excess of forty (40) hours in a workweek, Defendant has violated, and continue to violate, the FLSA,

FIRST AMENDED COMPLAINT

29 U.S.C. §§ 201, et seq., including 29 U.S.C. §§ 206(a), 207(a)(I), and § 215(a).

56. By failing to record, report, and/or compensate Plaintiff Defendant has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. §§ 201, et seq., including 29 U.S.C. § 211(c) and § 216(b).

57. Plaintiff Jorge Hernandez, seeks damages in the amount of his respective unpaid minimum wages, overtime compensation, and liquidated damages, as provided by the FLSA, 29 U.S.C. §§ 216(b), 255 and such other legal and equitable relief as the Court deems just and proper.

58. Plaintiff Jorge Hernandez, seeks recovery of attorneys' fees and costs of action to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment as follows:

1. For a declaratory judgment with a finding that Defendant City of Imperial terminated Plaintiff's public contract without due process or good cause;

2. For injunctive or other relief ordering Defendant City of Imperial to reinstate the status quo effective March 10, 2015 including Plaintiff's public employment contract and paid administrative leave with full benefits.

3. For judgment against Defendant City of Imperial in the sum of full back pay and benefits for the period March 10, 2015 through the date of entry of judgment, plus pre-judgment interest thereon at the maximum rate allowed by law.

4. For an accounting from Defendant City of Imperial of Plaintiff's hours worked during the period in which Imperial paid Plaintiff an hourly wage (in

FIRST AMENDED COMPLAINT

lieu of salary) including an itemized accounting of all unpaid hours and all unpaid overtime that came due during this period including the date each sum came due.

5. For judgment against Defendant City of Imperial in the sum determined by the accounting to be due in unpaid wages, plus double that amount as a liquidated damage, plus pre-judgment interest from the date it was earned, plus costs and attorneys' fees.

6. For judgment against each Defendant in a sum sufficient to compensate Plaintiff for his special and general damages proximately caused by that Defendant's acts and omissions, and/or for joint and several liability as to those Defendants acting in concert, including but not limited to past and future wage loss and benefits (medical, dental, retirement, vacation, seniority-based additional vacation, etc.), diminution of future earning capacity, and past and future medical and therapy expenses (physical and mental health), and past and future physical, emotional and mental pain and suffering, emotional distress, mental anguish, shame, fear, intimidation, humiliation, embarrassment, loss of enjoyment of life, loss of enjoyment of activities, loss of confidence, loss of self-esteem, loss of reputation, loss of good name, loss of chosen profession and occupation, loss of resume value, loss of opportunity for alternate employment, and deprivation of and chilling the exercise of civil rights and constitutional rights, in sums according to proof;

7. That the Court make an award to the Plaintiff of all unpaid wages, overtime wages and interest due;

8. For reasonable attorneys' fees, pursuant to *42 U.S.C. § 1983,* 29 U.S.C. § 216(b), California Code of Civil  Procedure §1021.5;

9. For prejudgment interest at the maximum rate permitted by law;

FIRST AMENDED COMPLAINT

10. For exemplary damages as to each non governmental agency individual Defendant who is found to have acted with fraud, malice or oppression or in reckless or conscious disregard for Plaintiff's health and rights in an amount sufficient to punish or deter similar future conduct;

11. For recovery of attorney's fees to the full extent permitted by law;

12. For costs of suit incurred in this action;

13. For a trial by a jury of Plaintiff's peers;

14. For such other relief as the Court may deem just.

DATED:  April 7, 2016                          RYAN LAW, APLC


BY:  s/Andrew T. Ryan
     Andrew T. Ryan
     Attorneys for Plaintiff Jorge
     Hernandez

FIRST AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **DEMAND FOR JURY**

     Plaintiff Jorge Hernandez hereby demands and reserves the right to a trial by jury.

DATED:  April 7, 2016               RYAN LAW, APLC

                                   BY:  s/Andrew T. Ryan
                                        Andrew T. Ryan
                                        Attorneys for Plaintiff Jorge
                                        Hernandez

FIRST AMENDED COMPLAINT